59 CCPA

### Application of Kenneth K. GRAVES.
### Patent Appeal No. 8570.

United States Court of Customs and Patent Appeals.
April 20, 1972.

M. H. Hartwell, Jr., Portland, Or. (Kolisch & Hartwell, Portland, Or.), attys. of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

WORLEY, Chief Judge.

The issue here is whether the Board of Appeals committed reversible error in sustaining the examiner's rejection of claims 3, 4, 6, 7, 8, 11, 12, 15 and 16 [1] as unpatentable in view of certain prior art under 35 U.S.C. § 103.

The invention relates to a method of manufacturing laminated wood core members and a method of making a plywood panel embodying such a core member.

According to appellant's application, the supply of sound veneer plies for plywood panels is diminishing. That condition has led to use of low grade veneer with defects, including holes, splits, etc., as the core sheet in such panels, with the result that the panels have uneven surfaces in the regions over large defects and have less rigidity. In order to make use of low grade veneer in core sheets while obtaining better quality panels, appellant proposes making core members in the form of composite slabs by a method illustrated in Fig. 1 of the application:

Fig. 1.

[A5668]

---

1. Appearing in application serial No. 512,048, filed December 7, 1965, for "Laminated Wood Product and Method of Manufacturing Same."

Appellant's method includes passing a plurality of veneer sheets 10 (which may have defects shown at 11 and 11a) through rollers 12 to apply adhesive to their surfaces, assembling the sheets in a pile, and consolidating the assembled sheets into a block 14 by hot or cold pressing techniques. The block 14 is cut in a direction perpendicular to the planes of the assembled sheets to provide a plurality of cores 16. The procedure results in the reduction of a large flaw, such as 11a in veneer sheet 10, to a relatively insignificant imperfection 11a in slab 16. A final plywood panel may be produced by covering slab 16 with cross banding sheets and bonding top and bottom veneer face sheets to the assembly in accordance with conventional practice or, if desired, the cross banding sheets may be omitted.

In connection with the formation of block 14, the application states:

\* \* \* Rolls 12 are constructed so that only certain portions 13 of the rolls carry adhesive and therefore only selected surfaces on opposite faces of the veneer sheets have adhesive applied thereto, as shown by stripes 13a. Adhesive need be applied in the aforementioned skip pattern only to alternate sheets of veneer 10. The other sheets have no adhesive applied thereto. A plurality of sheets 10 are assembled, as shown in Fig. 1, into a pile in which the fiber orientation of alternate sheets of veneer are parallel, at 90° to each other, or in any combination of parallel and 90° to each other. \* \* \*

The feature of applying adhesive only to selected surfaces of sheets 10 is described as effecting a substantial savings in adhesive cost.

Claims 11 and 12 are exemplary:

11. The method of manufacturing core members for plywood panels which comprises the steps of

providing a source of veneer sheets, applying adhesive to selected portions only of

at least some of said sheets to form an interrupted adhesive coating over such sheets

assembling said sheets against each other in a pile with such sheets disposed in substantially parallel planes of assembly, consolidating the sheets into an integral block, and cutting at an angle to the planes of assembly of said

sheets slabs of material for use as core members in plywood panels, the adhesive application and sheet assembly being performed in such a manner that the interrupted adhesive coatings appear as noncontinuous glue lines distributed between adjacent cut pieces of sheets in a slab sufficient to hold the cut pieces as an integral slab.

12. The method of manufacturing a plywood product comprising

providing a source of veneer sheets, assembling a plurality of sheets adjacent each other

into a pile with such sheets disposed in substantially parallel planes of assembly and with the grain of a substantial portion of the sheets extending in a common direction,

consolidating the sheets in the pile into a solid block, cutting slabs of material from said block with such slabs cut in planes that are disposed

at an angle to the planes of assembly of the sheets in said block and with the grain of said substantial portion of the sheets being substantially parallel to the planes in which the slabs are cut, said pile of sheets prior to consolidation into the block having adhesive distributed between the sheets in the pile sufficient to enable the cutting of integral slabs from each block, and bonding veneer sheets to opposite faces of said slabs.

Claims 3, 4, 6, 7 and 8 are dependent on claim 11, adding features which will be discussed below only insofar as material here. Like claim 12, claims 15 and 16 recite a method of manufacturing a plywood panel, but they further require an

interruption in the adhesive coating applied to the veneer sheets in making the core slab.

Claims 4, 6, 7, 8 and 11 were rejected as obvious in view of Williamson[2] and Payzant,[3] and the same references with the addition of Galber[4] were applied to claim 3. Claim 12 stands rejected as obvious in view of Williamson and Bryant[5] and claims 15 and 16 were rejected on the same two references further in view of Payzant.

Williamson discloses a method of producing laminated sheets of wood veneer. Starter sheets of veneer are cut from a log, treated with adhesive, assembled in a pile and compressed into a solid block. The block is then cut perpendicularly to the planes of the starter sheets to provide a plurality of laminated slabs similar to those shown at 16 in appellant's drawing.

Payzant relates to bonding plies of wood veneer to produce plywood. He applies the adhesive to the sheets in various patterns which leave uncoated areas at the interfaces of adjoining sheets. Those uncoated areas facilitate passage of moisture between adjacent sheets to equalize the moisture content and reduce the tendency of the plywood to warp.

Galber discloses bonding plywood by applying adhesive to the component sheets in a generally striped pattern. An object of the procedure is to reduce consumption of adhesive.

Bryant discloses a composite panel made up of a core of strips of low grade wood "edge glued" together and wood veneer sheets bonded to opposite sides of the core.

It is clear that Williamson discloses a method of providing a core slab which is similar to appellant's method and which inherently provides the same advantage of minimizing the effect of imperfections in the original sheet from which the core slab is made. The only feature of the method of claim 11 that fails to find response in the Williamson method is the application of adhesive in interrupted coatings that appear as noncontinuous glue lines between adjacent cut pieces in the finished slab. The disclosure of applying adhesive to less than the entire interfacial area in Payzant[6] would suggest that a similar practice be followed in producing Williamson's slabs when a sufficiently strong bond could nevertheless be attained, if for no other reason than the very obvious one of saving on the amount of adhesive used and even in the absence of consideration of the specific reference to reducing glue consumption in Galber.[7] As to the recitation regarding noncontinuous glue lines between adjacent cut pieces of the slabs, we agree fully with the view, taken by the examiner, that common sense would dictate that the areas of original sheets to which adhesive is applied would be so selected that the cut pieces of the slab would be held together. Various patterns of adhesive application which would accomplish that result would, we think, be apparent to the

2. U.S. Patent 3,205,111 issued September 7, 1965.

3. U.S. Patent 2,205,600 issued June 25, 1940.

4. U.S. Patent 2,290,548 issued July 21, 1942.

5. U.S. Patent 3,234,074 issued February 8, 1966, on an application filed January 14, 1963.

6. That the area covered by adhesive be varied in accordance with the strength of the bond required is expressly suggested by Payzant, which states that the ratio of the area coated with adhesive to that not coated "may vary and is not critical where the strength of the bond is not to be considered."

7. Appellant argues that Williamson relies on the water in a water-containing adhesive to increase the moisture content of the block to facilitate cutting slabs off with a *knife* instead of a saw and therefore would discourage reducing the total amount of adhesive employed. That argument is not persuasive. Williamson acknowledges the previous practice of sawing slabs from a laminated block without the need to increase moisture content. No reason is apparent to us for by-passing an opportunity to save on adhesive cost if sawing were contemplated.

worker in the art. If a specific suggestion of a striped pattern, recited in claim 3, be required, it is adequately supplied by Galber.

The only other claim dependent on claim 1 that merits separate mention is claim 8 which states that adhesive is applied to opposite faces of alternate sheets. It being clear that only one adhesive film is necessary between each pair of contacting surfaces,[8] it seems to us that the recited procedure would be obvious to one of ordinary skill in the art.

As to claims 12, 15 and 16, the bonding of veneer sheets to opposite sides of a slab such as Williamson's to use it as a plywood core member is clearly made obvious by Bryant's disclosure of applying similar sheets to a slab made of low grade lumber strips. It is true that claim 12 requires that "the grain of a substantial portion of the sheets * * * [be] substantially parallel to the planes in which the slabs are cut" while Williamson apparently shows the cut made across the grain. On that point, however, we fully agree with the examiner, that:

> whether the block is cut along the longitudinal or lateral axis is purely a designer's choice, obvious to one skilled in the art and unproductive of any unexpected results. Thus, if one skilled in the art wanted a longer slab [in Williamson where the starter sheets are longer longitudinally of the grain than across it], he certainly would cut along the longitudinal axis and hence along the grain direction. * * *

Claim 15 calls for bonding sheets to opposite sides of a slab formed with an interrupted coating as specified, for example, in claim 11. For reasons already set forth, we agree with the board that the recited variations in Williamson's process would have been obvious in view of Payzant and Bryant. Finally, claim

16 recites that the adhesive covers 30 to 50% of the opposite surface areas of the abutting surfaces of the sheets. Applicant has not persuaded us of any patentable significance in that recitation.

The decision is affirmed.

Affirmed.

59 CCPA

---

8. Williamson discloses that adhesive may either be applied to both sides of the sheets or to one side only.